IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSAN K. EWING,

      Plaintiff,

vs.                                                                    No. CIV 97-00371 PK/LFG

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, STATE FARM LIFE
INSURANCE COMPANY, and
STATE FARM FIRE AND
CASUALTY COMPANY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Motion for
Summary Judgment filed December 18, 1997 (doc. 39), Defendants' Motion to
Strike filed March 9, 1998 (doc. 62), Defendants' Unopposed Motion for
Extension of Time to File Reply Brief in Support of Defendants' Motion to Strike
filed April 23, 1998 (doc. 72), Defendants' Second Motion to Strike filed April
23, 1998 (doc. 70), and Defendants' request for attorney's fees, (doc. 10).  The
court, being fully advised in the premises, finds that the summary judgment
motion is well taken and should be granted.

The motion to strike is not well taken and should be denied given the
court's obligation to liberally construe pro se pleadings, including those on

summary judgment, see Hall v. Bellmon, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); Jaxon v. Circle K Corp., 773 F.2d 1138, 1139-40 (10th Cir. 1985) (considering whether materials could be put in proper form), and the court's ability to determine what can be considered on summary judgment, see Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317, 324 (1986).  The court is not persuaded of the Defendants' need for additional time to reply to the Plaintiff's response (reply) (doc. 69) to their motion to strike.  As for the second motion to strike, the court will deny it on the same grounds it denied the first motion to strike.  Moreover, in light of the disposition of the summary judgment motion, even after considering the materials advanced by the Plaintiff, the motions to strike may be moot.  See Macklanburg-Duncan Co. v. Aetna Cas. & Sur. Co., 71 F.3d 1526, 1537 n.10 (10th Cir. 1995); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1548 (10th Cir. 1995).  Regardless, in resolving the summary judgment motion, the court has considered the materials submitted by the Plaintiff in the pleading entitled "Reply (Supplementary) in Opposition to Defendants' Motion to Strike"[1] filed April 8, 1998 (doc. 69).

---

[1]  This pleading actually consists of an introductory document entitled "Reply (Supplementary) in Opposition to Defendants' Motion to Strike" and several other documents including a "Memorandum Brief (Supplementary) In Opposition to Defendants['] Motion to Strike," "Establishing the Prima Facie Evidence," an "Application History of Plaintiff," and numerous exhibits with explanations by the Plaintiff of how they support her case.  The Clerk docketed all of the documents as one entry (doc. 69), and the court generally will cite it as "Reply (Supplementary) in Opposition to Defendants' Motion to Strike."

The court declines to award Defendants attorney's fees as prevailing parties.  See 42 U.S.C. § 2000e-5(k); Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) (suit must be brought in bad faith or be "frivolous, unreasonable, or without foundation"); EEOC v. St. Louis-San Francisco Ry., 743 F.2d 739, 744 (10th Cir. 1984).  Although the Plaintiff has failed to make a prima facie case under Title VII and the action will be dismissed prior to trial, the court cannot say that the case is "patently devoid of merit," particularly considering the limitations questions.  See Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1558-59 (11th Cir. 1995) (internal quotation omitted).

## Background

Plaintiff contends that Defendants discriminated against her because of her gender in not appointing her a State Farm agent to succeed her father, Stan Ewing, who was a State Farm agent from the mid-1950s until his death on November 22, 1995.  Plaintiff relies on the following theories:  count I, employment discrimination, 42 U.S.C. § 2000e-2(a); count II, breach of contract and bad faith; count III, intentional infliction of emotional distress; and count IV, prima facie tort.

Plaintiff worked for her father for many years, and her father made numerous requests that she be appointed an agent and ultimately succeed him.  State Farm agents are independent contractors.  For agency openings before

- 3 -

September 1995, potential agents were selected from "agency pools" of prospective candidates by the Sunland Regional Office (New Mexico, Arizona and Texas) and the Agency Manager.[2]  The agency pools came from referrals from State Farm agents and others; State Farm did not advertise or use employment agencies.  The successful candidate became a "trainee agent" and, upon successful completion of the training program, an independent agent.

State Farm looked favorably upon qualified relatives of State Farm agents becoming agents themselves, with a possible assignment of business from the established agent.  However, the policy also provided "that relatives of our established agents--like all agency candidates--meet the selection and training standards established for all new State Farm agents."  Plaintiff's Response filed February 13, 1998, ex. A (doc. 57).   The policy further provided that any such arrangements were "subject to prior regional management approval."  Id.

In 1994, State Farm announced a program called Agency 2000 that involved restructuring and elimination of several management positions, as well as a revision of its selection process for its independent contractor agents. One highly significant change in the selection process for agents was the requirement, for agency openings that occurred in September 1995 and thereafter, that a

_____

[2]  The agency manager was a State Farm employee who oversaw the independent contractor agents in a particular area, here the Farmington-Grants-Gallup area of northwestern New Mexico.

- 4 -

prospective candidate be employed by State Farm full time for three continuous years.  See Brief in Support of Defendants' Motion for Summary Judgment filed December 18, 1997 at 10 (doc. 40) (undisputed fact nos. 7 & 8, citing Johnson aff. filed December 18, 1997; at 6-7, ¶¶ 14-16 (doc. 42)); see also Johnson aff. filed December 18, 1997; at 2 (doc. 42), ¶ 4; Mayfield aff. filed December 18, 1997 at 6, ¶ 15; at 10 ¶ 21 (doc. 43); Morris aff. filed December 18, 1997 at 3, ¶ 6 (doc. 45); Reply (Supplementary) in Opposition to Defendants' Motion to Strike filed April 8, 1998, exh. P-29 (doc. 69).  Although Plaintiff claimed in her complaint (doc. 1 at 5, ¶ 25), and asserted in her reply brief that Agency 2000 requirements were not announced until January 1995 to take effect on January 1996, the deposition passage she cites in no way supports this, see Plaintiff's Response filed February 13, 1998 at 6 (doc. 57), and the summary judgment evidence uniformly indicates that the new process applied to agency openings in the Sunland Region that occurred in September 1995 and thereafter.

As early as July 1993, Plaintiff's father, Mr. Ewing, indicated by letter that he wanted to retire by December 31, 1995, and assign his State Farm policies to Plaintiff.[3]  Mr. Ewing maintained that in 1983 a former agency manager had promised Plaintiff an agency appointment.  In February 1994, State Farm

---

[3] By December 31, 1995, appointments to agencies were governed by the Agency 2000 process.  See Johnson aff. filed December 18, 1997 at 14, ¶ 29 (doc. 42).

management personnel met with Mr. Ewing and discussed the last pre-Agency-2000 pool that was forming for trainee agents and the steps that Plaintiff would need to take to join it.  See Morris aff. filed December 18, 1997 at 3-4, ¶ 6 (doc. 45).  State Farm contends it told Mr. Ewing that the pool was for the entire Sunland Region and that Mr. Ewing rejected it for Plaintiff unless she was guaranteed an agency in Farmington and assignment of his policies.  Id. at 3-4, ¶¶ 6-7 (doc. 45). On the other hand, Plaintiff maintains that both she and her father were told that the last pool was only for one retiring agent in Phoenix, Arizona, not the entire Sunland Region.  See Reply (Supplementary) in Opposition to Defendants' Motion to Strike filed April 8, 1998 at "Application History of Plaintiff" ¶ 13 (doc. 69); id. at exh. P.-23.  She points to State Farm records indicating that from January-December 1994, thirty-two referrals were made by State Farm agents or agency directors, and twenty-four of those were hired in relative pools.  Id. at exh. P-30.  For purposes of summary judgment, the court will assume that State Farm did indeed hire relatives in 1994 and that Plaintiff and her father were not informed of the agency pool for the entire Sunland Region.  As will be apparent below, this fact makes little difference because it is unanimous on this record that Plaintiff wanted only to succeed her father as an agent in Farmington and be assigned his policies.

In September 1994, State Farm's agency vice-president at its Illinois headquarters responded by letter that State Farm had offered Plaintiff an

opportunity to become an agent in Yuma, Arizona, in 1991[4] and that Mr. Ewing

would need to check with the Sunland regional vice-president concerning any

possible agency openings in Farmington prior to Agency 2000.  In a blind

postscript to the regional vice-president, the agency vice president said:

> I tried to steer this thing back to you.  I don't know about what you've
> done, but some regions have agreed that they will appoint qualified sons or
> daughters if the father agrees to retire or give up substantial numbers of
> accounts.  That's, of course, your decision.

Reply (Supplementary) In Opposition to Defendants' Motion to Strike filed April

8, 1998 at exh. P-26 #2.  In October 1994, State Farm's regional vice-president

wrote Mr. Ewing that no agent positions were available in Farmington, but that

an active agency pool was being formed to replace a retiring agent in Phoenix.

The candidates in the agency pool were primarily sons and daughters of State

Farm agents hoping for selection prior to Agency 2000.  State Farm requested a

response within 10 days if Plaintiff was interested.  In the alternative, State Farm

indicated that Plaintiff could apply for employment with State Farm and proceed

---

[4]  The Sunland Region had a pre-Agency-2000 requirement that prospective
candidates have a college degree or a CLU designation.  At Mr. Ewing's request,
this requirement was waived for Plaintiff and she was allowed compete in an
agency pool for Yuma until she withdrew from the selection process.  See
Johnson aff. filed December 18, 1997, exh. H (doc. 42); Reply (Supplementary)
in Opposition to Defendants' Motion to Strike filed April 8, 1998, exh. P-18
(doc. 69).  Plaintiff also was in an agency pool for a possible agency in Telluride,
Colorado.  State Farm decided not to locate an agent in Telluride and the agency
manager wrote Plaintiff in September 1994 that her application was being
deactivated given the advent of Agency 2000.  See Bock aff. filed December 18,
1997, exh. B (undesignated on original) (doc. 41).

through the Agency 2000 process.

In November 1994, Mr. Ewing responded indicating that any opportunity for Plaintiff should rightfully be in Farmington and that Plaintiff could not take an entry level job with State Farm for three years in order to qualify through the Agency 2000 process.

In the spring of 1995, Mr. Ewing informed State Farm that he wanted to retire at the end of 1995. Mr. Ewing reached an agreement with Cal Mayfield, his agency manager. Mr. Mayfield's position was being eliminated as part of Agency 2000. The agreement between Mr. Ewing and Mr. Mayfield was contingent upon Mr. Mayfield being appointed a State Farm agent in Farmington and being assigned Mr. Ewing's policies. Mr. Mayfield agreed to purchase office furniture and equipment and assume Mr. Ewing's lease, as well as pay Mr. Ewing to stay on for 90 days and introduce him to policyholders and smooth the transition.

Mr. Mayfield had worked for State Farm for six years, having been an agent in Hobbs, New Mexico for eleven years previously. He was appointed an independent contractor agent effective November 1, 1995, with an assignment of policies to occur on January 1, 1996. Plaintiff maintains that Mr. Mayfield had been "unofficially appointed" on or before May 18, 1995, when Mr. Ewing signed his termination agreement with State Farm. See Plaintiff's Response filed February 13, 1998 at 7 (disputed material fact no. 4) (doc. 57); Johnson aff. filed

- 8 -

December 18, 1997, exh. N (termination agreement) (doc. 42).  Following Mr.

Ewing's unexpected death on November 22, 1995, State Farm assigned Mr.

Ewing's policies to Mr. Mayfield.

<u>Discussion</u>

Summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

An important function of summary judgment is to eliminate factually unsupported

claims.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323-24.  The nonmovant may not rest upon her

pleadings, but "must set forth specific facts showing that there is a genuine issue

for trial."  Fed. R. Civ. P. 56(e).  Once the movant has identified an element of a

claim that the nonmovant cannot prove, all other factual disputes concerning the

claim become immaterial and summary judgment is properly entered.  <u>See</u>

<u>Celotex</u>, 477 U.S. at 322-23.  The summary judgment material relied upon by the

nonmovant is viewed in the light most favorable to her; however, that material

must contain significantly probative evidence that would allow a trier of fact to

find in her favor.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50

(1986).

A.  Title VII

1.  Independent Contractor

State Farm insists that Title VII does not apply to an employer's decisions concerning independent contractors, and thus the court lacks jurisdiction to inquire into its decisions about its agents.  While this is true as far as it goes, the complaint in this matter implicates State Farm's recruitment and selection practices for appointing trainee agents who are employed by State Farm prior to their appointment as independent contractor agents.  Plaintiff's claim is that she was treated less favorably than male relatives of State Farm agents in the recruitment and selection process that could eventually lead to an offer to be an independent contractor agent.  See Tomsic v. State Farm Mut. Auto Ins. Co., 85 F.3d 1472, 1476-77 (10th Cir. 1996).  State Farm's position on this point must be rejected, precisely for the same reason it was rejected by the authority attached to State Farm's summary judgment brief.  See doc. 40, ex. B (Andrews v. State Farm Mut. Auto Ins. Co., No. 88-0494, unpub. order at 2 (W.D. Va. Aug. 26, 1991), aff'd, No. 91-2236 (unpub. per curiam) (4th Cir. Sept. 30, 1992)); see also Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1146-47 (9th Cir. 1997) (Title VII action by Mexican-American woman not selected as trainee agent).

2.  Prima Facie Case

State Farm next contends that it is entitled to summary judgment because Plaintiff was not qualified as a State Farm agent in 1995 or thereafter.  In its

- 10 -

reply brief, State Farm points out that, in her charge filed with the EEOC on May 7, 1996, Plaintiff indicated that the most recent or continuing discrimination against her occurred on December 1, 1995.  See Norris aff. filed December 18, 1997 (doc. 46).  While no summary judgment evidence reveals the importance of December 1, on November 1, 1995, Mr. Mayfield had been appointed an agent and thereafter was assigned Mr. Ewing's policies.  State Farm argues that Plaintiff's claims of discrimination, other than the appointment of Mr. Mayfield, are barred because these events are outside the 300-day period for filing a charge of discrimination in 42 U.S.C. § 2000e5(e)(1).  In other words, many of these claims or events predate July 13, 1995.  State Farm raised limitations as an affirmative defense in its answer.  See Fed. R. Civ. P. 8(c).  State Farm is correct.

Plaintiff must prove intentional discrimination, that because of her gender was treated differently and less favorably than similarly situated males.  See Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1001 (1998).  She has no direct evidence of gender discrimination such as a policy that is discriminatory on its face.  See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121-22 (1985); Ramsey v. City & County of Denver, 907 F.2d 1004, 1007-08 (10th Cir. 1990), cert. denied, 506 U.S. 907 (1992).  Instead, she must rely on indirect proof, i.e. the McDonnell Douglas framework, with its requirement for a prima facie case establishing that she was qualified for the position sought.  See St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Randle v. City of Aurora, 69 F.3d 441, 451-53 (10th Cir. 1995).  The burden to establish the prima facie case is not a heavy one.  See Patterson v. McClean Credit Union, 491 U.S. 164, 186 (1989); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Where qualifications for a position are subjective, a plaintiff normally will progress beyond a prima facie case, a defendant will then come forward with legitimate, non-discriminatory reasons for the personnel action, and a plaintiff will be allowed to prove those reasons are pretextual.  See Thomas v. Denny's, Inc., 111 F.3d 1506, 1509-10 (10th Cir.), cert. denied, 118 S. Ct. 626 (1997); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1469-70 (10th Cir. 1992).  This case is different.  What distinguishes it is an objective qualification standard for trainee agents under Agency 2000 that Plaintiff could not meet, specifically, the three-year, previous full-time employment with State Farm.  See Thomas, 111 F.3d at 1510 n. 8; Ellis v. United Airlines, Inc., 73 F.3d 999, 1005 n.6 (10th Cir.) (maximum weights for flight attendants), cert. denied, 116 S. Ct. 2500 (1996); York v. AT & T, 95 F.3d 948, 954 (10th Cir. 1996) (two years of practical experience for operating engineer).  The uncontroverted evidence is that Mr. Ewing did not want to retire until December 31, 1995,[5] and any agency opening

_____

[5]  Plaintiff suggests that this date was selected to insure spousal benefits for Mr. Ewing's second wife.  See Reply (Supplementary) in Opposition to

at that time would have been filled pursuant to Agency 2000.  In the absence of summary judgment evidence that an employer's qualifications are unreasonable or inconsistently applied, an employer's qualification standards will not be second-guessed by a trier of fact.  See York, 95 F.3d at 954.  Although Plaintiff asserts that an exception was made to the Agency 2000 qualifications for the son (Ron Sanders) of a male agent appointed in January 1995, see Plaintiff's Response filed February 13, 1998 at 5 (citing Johnson depo. at 125) (doc. 57), the son would have been a trainee agent prior to Agency 2000 and was appointed an agent before the September 1995 effective date of Agency 2000.  Plaintiff's reliance on pre-Agency-2000 candidacies involving relatives (Martin Armijo, Kimberly Fleming and Diane Dilallo) likewise does not focus on the pertinent time period.  See Reply (Supplementary) in Opposition to Defendants' Motion to Strike filed April 8, 1998, "Memorandum Brief" at 4 & at "Defendants' Violation of Title VII" (doc. 69).

Once Agency 2000 took effect, Plaintiff simply was not qualified to be a State Farm agent absent three years of employment with State Farm.  Although Plaintiff had worked with State Farm policies for twenty years, she was an employee of her father, not State Farm.  See Deal v. State Farm County Mut. Ins.

---

Defendants' Motion to Strike filed April 8, 1998 at exh. P-23 (doc. 69).  State Farm adds that the date was selected because of Mr. Ewing's financial need--he had previously declared bankruptcy.

Co., 5 F.3d 117, 119 (5th Cir. 1993).  The summary judgment record could not be clearer that the parties knew that Agency 2000 would alter the way State Farm chose its agents, perhaps to the detriment of agents' relatives, particularly those that did not want to complete the three-year requirement.

### 3.  Legitimate Non-Discriminatory Reasons and Pretext

State Farm next argues that even if the Plaintiff made a prima facie case of gender discrimination, she cannot prevail on her gender discrimination claim because State Farm has offered legitimate, nondiscriminatory reasons for the appointment of Mr. Mayfield, including his qualifications and the business needs of both Mr. Ewing and State Farm.  Of course, a plaintiff in a Title VII case who makes a prima facie case need only demonstrate that the reasons offered are pretextual or unworthy of belief, in order to avoid summary judgment.  See Randle, 69 F.3d at 452 n.17.  This means that a plaintiff is only required to show the falsity of the employer's reasons, not that the reasons conceal a motive for unlawful discrimination.[6]  Id. at 453 n.18.  The showing of pretext creates an inference of discriminatory animus sufficient to survive summary judgment.  See

---

[6]  Thus, the statement in State Farm's reply brief that the Plaintiff must at the pretext stage show falsity and that discrimination was the real reason, see Reply in Support of Defendants' Motion for Summary Judgment filed March 9, 1998 at 5 (doc. 64), is too restrictive under Tenth Circuit law.  To avoid summary judgment at the pretext stage, Plaintiff need only show that the reasons are unworthy of belief or that a discriminatory reason really motivated the employer.  See Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 327-28 (10th Cir.), cert. denied, 116 S. Ct. 2552 (1996).

St. Mary's Honor Ctr., 509 U.S. at 511.  Fortunately for State Farm, Plaintiff's

evidence of pretext need not be addressed because she has not made a prima facie

case.  See Sprague v. Thorn Am., Inc., 129 F.3d 1355, 1362 (10th Cir. 1997).

### 4.  Limitations Period and Continuing Violation

In New Mexico, a Title VII Plaintiff must file a charge of discrimination

within 300 days "after the alleged unlawful employment practice occurred."  42

U.S.C. § 2000e-5(e).  In the Title VII context, the limitations period serves the

salutary purpose of requiring prompt assertion of rights and barring challenge of

dated employment decisions.  See Delaware State College v. Ricks, 449 U.S. 250,

256-57 (1980).  Much of the summary judgment evidence presented by Plaintiff

concerns events and transactions outside the 300-day period prior to May 7,

1996.  Much concerns pre-Agency-2000 employment policies and practices.

The court has considered sua sponte whether Plaintiff might rely upon a

continuing violation theory under Title VII to recover for events outside the 300-

day period.  A plaintiff may rely upon events outside the limitations period where

one of the events occurs within the filing period, and the prior events are "part of

a continuing policy or practice that includes the act or acts within the statutory

period."  Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir.

1993).  Although the prior events need not be sufficient Title VII claims in

themselves, mere continuing effects of a policy or practice occurring outside the

limitations period are not sufficient.  See Furr v. AT & T Tech., Inc., 824 F.2d

1537, 1543 (10th Cir. 1987). Where, as here, a plaintiff cannot make a prima facie case for events occurring within the limitations period, the continuing violation theory does not apply because plaintiff cannot show that the same type of discrimination links the alleged violations within and without the limitations period.  See Mascheroni v. Board of Regents, 28 F.3d 1554, 1561-62 (10th Cir. 1994).  Moreover, equitable considerations counsel against invoking the doctrine in this case.  The purpose of the doctrine is to preserve a claim until a reasonable person would be aware that her rights have been violated.  See Martin, 3 F.3d at 1415 n.6.  The interaction of Plaintiff and her father with State Farm spanning some twelve years prior to the adoption of Agency 2000 surely should have alerted a reasonable person that State Farm, for whatever reason, was not going to appoint her an agent in Farmington.

### B.  State Law Diversity Claims

#### 1.  Breach of Contract and Duty of Good Faith

In count II, Plaintiff claims that she should have been appointed an agent as a third-party beneficiary of a contract between her father and State Farm, or in her own right.  She claims that the failure to appoint her constitutes a breach of the duty of good faith and fair dealing.  Although the Plaintiff and her father have long contended that State Farm's agency agreement with Mr. Ewing and the policy statement concerning  potential appointment of relatives (pre-Agency-

- 16 -

2000) somehow required State Farm to appoint her an agent in Farmington, nothing in those documents, Mr. Ewing's termination agreement, or the declaration of understanding signed by Plaintiff as part of the selection process for trainee agents, has been brought to the court's attention on summary judgment that would make such a theory viable. State Farm had discretion, not a duty, to appoint relatives as trainee agents. Furthermore, the implied covenant of good faith and fair dealing cannot provide the foundation for terms not in a contract. See Watson Truck & Supply Co. v. Males, 801 P.2d 639, 642 (N.M. 1990).

### i.  Limitations

State Farm first argues that the Plaintiff's breach of contract claim is barred by the four-year limitations period applicable to unwritten contracts, see N.M. Stat. Ann. § 37-1-4 (Michie 1990 Repl. Pamp.). The limitation period on claims runs from the date the cause of action accrues, and on contract claims that is the date of the breach. See N.M. Stat. Ann. § 37-1-1 (Michie 1990 Repl. Pamp.); Nashan v. Nashan, 894 P.2d 402, 410 (N.M. Ct. App.), cert. denied, 891 P.2d 1218 (N.M. 1995). Plaintiff contends that a prior agency manager promised her on two occasions (in 1983 and prior to December 1988) that she would be appointed an agent in Farmington at the next available opening. She acknowledges that despite these promises she did not receive an appointment as a trainee agent when openings occurred in 1984 and 1989, see Reply (Supplementary) in Opposition to Defendants' Motion to Strike filed April 8,

1998 at "Application History of Plaintiff" ¶¶ 2-3; at exh. P-17 (doc. 69), and that a successor agency manager told her in 1989 that she would never be hired, that she would have to go elsewhere to prove herself before being considered for any Farmington appointment.  See id. at "Application History of Plaintiff" ¶ 4. Merely because the successor agency manager did not "disagree[] that she was in the pool for the Farmington district," id., does not create a material issue of fact as to when the alleged breaches occurred, see Tull v. City of Albuquerque, 907 P.2d 1010, 1012 (N.M. Ct. App. 1995) (applying single wrong theory), or her knowledge of those breaches, see Duncan v. Campbell, 936 P.2d 863, 864-65 (N.M. Ct. App.) (knowledge of problem allows for accrual of cause of action and running of limitation period), cert. denied, 936 P.2d 337 (N.M. 1997).

### ii.  Statute of Frauds and Vagueness

State Farm also argues that the statute of frauds bars enforcement of the alleged promises.  This ground must be rejected.  The statute of frauds applies to oral contracts that cannot be performed within one year, however, contracts for life or for an indefinite period of time do not come within its reach.  See Kestenbaum v. Pennzoil Co., 766 P.2d 280, 283 (N.M. 1988), cert. denied, 490 U.S. 1109 (1989).  Plaintiff contends she was promised that she "would be placed in line for the next available State Farm agency," and that the agency manager "would appoint [her] as an agent as soon as there was an opening."  Brief in Support of Defendants' Motion for Summary Judgment filed December 18, 1997,

exh. A (doc. 40).  State Farm argues that a two-year appointment as a trainee agent <u>must</u> precede appointment as an agent, therefore, the alleged promises could not be performed within a year and the statute of frauds applies.  <u>See</u> <u>Gonzales v. United Southwest Nat'l Bank</u>, 602 P.2d 619, 621 (N.M. 1979).  Construing the evidence in the light most favorable to the Plaintiff, however, a reasonable inference exists that the length of the training period is discretionary and could be less than two years.  <u>See</u>,<u>e.g.</u>, Johnson aff. filed December 18, 1997 at 5, ¶ 11 (doc. 42).  If so, the statute of frauds would not apply to the alleged promises.

The statute of frauds would not apply to an oral promise to become a trainee agent, with employment terminable at will by either party, because such a promise could be fulfilled in less than one year.  <u>See</u> <u>Restatement (Second) of Contracts</u>, § 130, illus. 6 (1981).

State Farm finally argues that any oral promise made to the Plaintiff is too vague and indefinite to be enforceable.  Given the summary judgment materials offered by the Plaintiff as to State Farm's policies and procedures regarding trainee agents, the court declines to rely upon this ground.

### 2.  Intentional Infliction of Emotional Distress

Counts III and IV of the complaint are tort claims with a three-year limitation period.  <u>See</u> N.M. Stat. Ann. § 37-1-8 (Michie 1990 Repl. Pamp.).  Intentional infliction of emotional distress requires (1) extreme and outrageous

conduct under the circumstances, (2) that a defendant acted intentionally or recklessly and (3) that as a result of the conduct Plaintiff experienced severe emotional distress. <u>Jaynes v. Strong-Thorne Mortuary, Inc.</u>, No. 23154, 1997 WL 836532, at \*5 (N.M. November 13, 1997) (relying upon 3 N.M.R. Ann. § 13-1628 (Michie 1998)).  Extreme and outrageous conduct is beyond the bounds of common decency and is atrocious and intolerable to the ordinary person.  <u>See Mantz v. Follingstad</u>, 505 P.2d 68, 75 (N.M. Ct. App. 1972) (citing <u>Restatement (Second) of Torts</u>, § 46 (1965)).  Emotional distress is severe if it is of such intensity and duration that a reasonable person would not be expected to endure it.  <u>See Jaynes</u>, 1997 WL 836532, at \*5.

Taking into account the events that preceded the three years before March 20, 1997, the date the complaint was filed, Plaintiff has not sustained her burden of showing a genuine issue of material fact on this claim.  As previously discussed, Plaintiff was not qualified under Agency 2000 to succeed her father in Farmington.  As to events that preceded September 1995, the effective date of Agency 2000, and taking Plaintiff's statements as true, no openings occurred in the Farmington district after July 1, 1990 until Mr. Mayfield was appointed on November 1, 1995.  <u>See</u> Reply (Supplementary) In Opposition to Defendants' Motion to Strike filed April 8, 1998 exh. P-17 (doc. 69).  State Farm's altering the qualifications for its agents and failure to create an opening for the Plaintiff in Farmington prior to Agency 2000 does not constitute intentional infliction of

- 20 -

emotional distress.

### 3.  Prima Facie Tort

Despite being unable to recover on her claim of intentional infliction of emotional distress, it is still necessary to consider Plaintiff's claim for prima facie tort.  See Schmitz v. Smentowski, 785 P.2d 726, 736 (N.M. 1990).  Prima facie tort requires (1) an intentional, lawful act by the defendant, (2) intent to injure the plaintiff, (3) injury to the plaintiff proximately caused by the act, and (4) lack of or insufficient justification for the act.  See Schmitz, 785 P.2d at 734; N.M.R. Ann. § 13-1631 (Michie 1998).  A plaintiff is not required to show that the sole motivation behind the defendant's act is an intent to harm.  See Schmitz, 785 P.2d at 735.  An intent to harm may be shown where a defendant acts with certainty that injury will result.  See id. at 738.  In such circumstances, any intent to harm must be balanced against the defendant's justification considering (1) the nature and seriousness of the harm, (2) the interests advanced by the defendant's conduct, (3) the character (fairness or unfairness) of the means used by the defendant, and (4) the defendant's motives.  See id. at 739; N.M.R. Ann. § 13-1631A (1998).

Because Plaintiff has not set forth what acts constitute the basis of a prima facie tort, it is difficult to evaluate this claim.  See Wright v. State Farm Mut. Auto Ins. Co., 911 F. Supp. 1364, 1369 n.1 (D. Kan. 1995) (court must be wary of constructing non-apparent arguments for pro se litigant), aff'd, 94 F.3d 657

(10th Cir. 1996).  It is doubtful that it is properly asserted in this case because Plaintiff contends that unlawful acts, i.e. gender discrimination, resulted in her injury.  See Lee v. ABF Freight Sys., Inc., No. CIV 91-1254 JC/RWM, 1992 WL 611458, at *2 (D.N.M. Sept. 23, 1992); Hill v. Cray Research, Inc., 864 F. Supp. 1070, 1078 (D.N.M. 1991).  Although prima facie tort can occur in a workplace setting, see Beavers v. Johnson Controls World Servs., Inc., 901 P.2d 761 (N.M. Ct. App.), cert. denied, 898 P.2d 120 (1995), it is unlikely that it was meant to interfere with a company's prerogative to select its employees or independent contractors.  See Schmitz, 785 P.2d at 738 (noting that prima facie tort cannot be used to avoid employment at will doctrine); Hill, 864 F. Supp. at 1078-80. Though the court has considered Plaintiff's presentation carefully, it is hardly apparent what evidence would entitle her to a trial on this theory.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Defendants' Motion for Summary Judgment filed December 18, 1997 (doc. 39) is granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants' Motion to Strike filed March 9, 1998 (doc. 62) is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants' Unopposed Motion for Extension of Time to File Reply Brief in Support of Defendants' Motion to Strike filed April 23, 1998 (doc. 72) is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

Defendants' Second Motion to Strike filed April 23, 1998 (doc. 70) is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

Defendants' request for attorney's fees (doc. 10) is denied.

Judgment shall be entered accordingly.

DATED this  24th  day of April 1998, at Santa Fe, New Mexico.

_____
United States Circuit Judge
Sitting by Designation


Susan K. Ewing, pro se.

Counsel:

Alan Konrad, Ruth M. Fuess and Virginia Anderman, Miller, Stratvert &
Torgerson, P.A., Albuquerque, New Mexico, for Defendants.

- 23 -